DOUGLAS S. CHIN (Bar No. 6465)
  Attorney General of the State of Hawai‘i
CLYDE J. WADSWORTH (Bar No. 8495)
  Solicitor General of the State of Hawai‘i
DEIRDRE MARIE-IHA (Bar No. 7923)
DEPARTMENT OF THE ATTORNEY
  GENERAL, STATE OF HAWAI‘I
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1500
Fax: (808) 586-1239
Email: deirdre.marie-iha@hawaii.gov

NEAL K. KATYAL*
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
Email:
neal.katyal@hoganlovells.com

*Pro Hac Vice Application
Forthcoming

*Attorneys for Plaintiff, State of Hawai‘i*
(See Next Page For Additional Counsel)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| STATE OF HAWAI‘I,<br><br>        Plaintiff,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of the U.S. Department of Homeland Security; U.S. DEPARTMENT OF STATE; REX TILLERSON, in his official capacity as Acting Secretary of State; and the UNITED STATES OF AMERICA,<br><br>        Defendants. | Civil Action No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; SUMMONS |

## ADDITIONAL COUNSEL

KIMBERLY T. GUIDRY (Bar No. 7813)
DONNA H. KALAMA (Bar No. 6051)
ROBERT T. NAKATSUJI (Bar No. 6743)
  Deputy Attorneys General
DEPARTMENT OF THE ATTORNEY
  GENERAL, STATE OF HAWAI'I
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1500
Fax: (808) 586-1239

COLLEEN ROH SINZDAK*
MITCHELL P. REICH*
ELIZABETH HAGERTY*
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910

THOMAS P. SCHMIDT*
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100

SARA SOLOW*
ALEXANDER B. BOWERMAN*
HOGAN LOVELLS US LLP
1835 Market St., 29th Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
Fax: (267) 675-4601

*Pro Hac Vice Applications
Forthcoming

Attorneys for Plaintiff, State of Hawai'i

## **INTRODUCTION**

1.      The State of Hawaiʻi (the "State") brings this action to protect its residents, its employers, its educational institutions, and its sovereignty against illegal actions of President Donald J. Trump and the federal government.

2.      President Trump's January 27, 2017 Executive Order, "Protecting the Nation From Terrorist Entry into the United States" (the "Executive Order"), blocks the entry into the United States, including Hawaiʻi, of any person from seven Muslim-majority countries:  Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen.[1]  The Executive Order has led to the detention of lawful permanent residents and noncitizens with valid visas seeking to enter or reenter the country.  It has led to hundreds of persons overseas with valid visas—students, family members of U.S. citizens, and persons whose green card status was approved— being turned away from boarding plane flights to the United States. The Executive Order also introduces religious criteria for the admission of refugees into the United States, including Hawaiʻi:  After suspending *all* refugee admissions for 120 days, President Trump's Executive Order prioritizes refugees who claim religious-based persecution where "the religion of the individual is a minority religion in the individual's country of nationality."  In Muslim-majority countries, this means a preference for Christians.

3.      President Trump's Executive Order is tearing apart Hawaiʻi families, damaging Hawaii's economy, and wounding Hawaiʻi institutions.  It is subjecting a portion of Hawaii's population to discrimination and second-class treatment, and denying them their fundamental right to travel overseas. Moreover, the Executive Order is eroding Hawaii's sovereign interests in maintaining the separation

---

[1] *See* Executive Order No. 13769, 82 Fed. Reg. 8977 (Jan. 27, 2017).  A copy of the Executive Order is attached as Exhibit 1.

between church and state and in welcoming persons from all nations around the world into the fabric of its society.

4.　　The State accordingly seeks an Order invalidating the portions of President Trump's Executive Order challenged here.

## JURISDICTION AND VENUE

5.　　This Court has Federal Question Jurisdiction under 28 U.S.C. § 1331 because this action arises under the U.S. Constitution, the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and other Federal statutes.

6.　　The Court is authorized to award the requested declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the APA, 5 U.S.C. § 706.

7.　　Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1).  A substantial part of the events giving rise to this claim occurred in this District, and each Defendant is an officer of the United States sued in his official capacity.

## PARTIES

8.　　Plaintiff is the State of Hawaiʻi.  Hawaiʻi is the nation's most ethnically diverse State, and is home to more than 250,000 foreign-born residents. More than 100,000 of Hawaii's foreign-born residents are non-citizens.[2]

9.　　Estimates from the Fiscal Policy Institute show that as of 2010, Hawaiʻi had the fifth-highest percentage of foreign-born workers of any state (20% of the labor force). And 22.5% of Hawaiʻi business owners were foreign-born.[3]

---

[2] United States Census Bureau, *2015 American Community Survey 1-Year Estimates*, *available at* https://goo.gl/IGwJyf.  A collection of the relevant data for Hawaiʻi is attached as Exhibit 2.

[3] The Fiscal Policy Institute, *Immigrant Small Business Owners*, at 24 (June 2012), *available at* https://goo.gl/vyNK9W.

10.     Thousands of people living in Hawaiʻi obtain lawful permanent resident status each year, including over 6,500 in 2015.[4]  That includes numerous individuals from the seven designated countries.  According to DHS statistics, over 100 Hawaiʻi residents from Iran, Iraq, and Syria have obtained lawful permanent resident status since 2004 (DHS has withheld data pertaining to additional residents from the seven designated countries).[5]

11.     Hawaiʻi is also home to 12,000 foreign students.[6]  That includes numerous individuals from the seven designated countries.  At the University of Hawaiʻi, there are at least 27 graduate students from the seven countries studying pursuant to valid visas issued by the U.S. government.

12.     In 2016, Hawaii's foreign students contributed over $400 million to Hawaii's economy through the payment of tuition and fees, living expenses, and other activities.  These foreign students supported 7,590 jobs and generated more than $43 million in state tax revenues.[7]

13.     In 2009, foreign residents (i.e., non-citizens who had not obtained lawful permanent resident status) made up 42.9% of doctorate students, and 27.7%

---

[4] U.S. Department of Homeland Security, *Lawful Permanent Residents Supplemental Table 1: Persons Obtaining Legal Permanent Resident Status by State or Territory of Residence and Country of Birth Fiscal Year 2015*, *available at* https://goo.gl/ELYIkn.  Copies of these tables for fiscal years 2005 through 2015 are attached as Exhibit 3.

[5] *See* Exhibit 3.

[6] Hawaii Department of Business, Economic Development & Tourism, *The Economic Impact of International Students in Hawaii – 2016 Update*, at 8 (June 2016), *available at* https://goo.gl/mogNMA.

[7] *The Economic Impact of International Students in Hawaii – 2016 Update*, *supra*, at 10-11.

of master's students, in science, technology, engineering, and mathematics ("STEM") programs in Hawaiʻi.[8]

14.   Hawaii's educational institutions have diverse faculties.  At the University of Hawaiʻi, there are approximately 477 international faculty members legally present in the United States.  There are at least 10 faculty members at the University who are legal permanent residents from one of the seven designated countries, and 30 visiting faculty members with valid visas who are from one of the seven designated countries.

15.   Tourism is Hawaii's "lead economic driver."[9]  In 2015 alone, Hawaiʻi welcomed 8.7 million visitors accounting for $15 billion in spending.[10]

16.   Hawaiʻi is home to several airports, including Honolulu International Airport and Kona International Airport.

17.   David Yutaka Ige is the Governor of Hawaiʻi, the chief executive officer of the State of Hawaiʻi.  The Governor is responsible for overseeing the operations of the State government, protecting the welfare of Hawaiʻi's citizens, and ensuring that the laws of the State are faithfully executed.

18.   Douglas S. Chin is the Attorney General of Hawaiʻi, the chief legal officer of the State.  The Attorney General is charged with representing the State in Federal Court on matters of public concern.

19.   The Constitution of the State of Hawaiʻi provides that "[n]o law shall be enacted respecting an establishment of religion, or prohibiting the free exercise

---

[8] U.S. Chamber of Commerce et al., *Help Wanted: The Role of Foreign Workers in the Innovation Economy*, at 21 (2013), *available at* https://goo.gl/c3BYBu.
[9] Hawaiʻi Tourism Authority, *2016 Annual Report to the Hawaiʻi State Legislature*, at 20, *available at* https://goo.gl/T8uiWW.
[10] Hawaiʻi Tourism Authority, *2015 Annual Visitor Research Report*, at 2, *available at* https://goo.gl/u3RQmX.  A copy of the table of contents and executive summary of this report is attached as Exhibit 4.

thereof." Haw. Const. Art. I § 4. And the State has declared that the practice of discrimination "because of race, color, religion, age, sex, including gender identity or expression, sexual orientation, marital status, national origin, ancestry, or disability" is against public policy. Haw. Rev. Stat. Ann. § 381-1; *accord id.* §§ 489-3 & 515-3.

20. The State has an interest in protecting the health, safety, and welfare of its residents—including residents awaiting adjustment of their immigration status or naturalization—and in safeguarding its ability to enforce State law. The State also has an interest in "assuring that the benefits of the federal system," including the rights and privileges protected by the United States Constitution and Federal statutes, "are not denied to its general population." *Alfred L. Snapp & Sons v. Puerto Rico*, 458 U.S. 592, 608 (1982). The State's interests extend to all of the State's residents, including individuals who suffer indirect injuries and members of the general public.

21. Defendant Donald J. Trump is the President of the United States. He issued the January 27, 2017 Executive Order that is the subject of this Complaint.

22. Defendant U.S. Department of Homeland Security ("DHS") is a federal cabinet agency responsible for implementing and enforcing the Immigration and Nationality Act ("INA") and the Executive Order that is the subject of this Complaint. DHS is a Department of the Executive Branch of the United States Government, and is an agency within the meaning of 5. U.S.C. § 552(f). U.S. Customs and Border Protection ("CBP") is an Operational and Support Component agency within DHS, and is responsible for detaining and removing non-citizens from Iran, Iraq, Syria, Somalia, Sudan, Libya, and Yemen who arrive at air, land, and sea ports across the United States, including Honolulu International Airport and Kona International Airport.

23.     Defendant John F. Kelly is the Secretary of the Department of Homeland Security.  He is responsible for implementing and enforcing the INA and the Executive Order that is the subject of this Complaint, and he oversees CBP. He is sued in his official capacity.

24.     Defendant U.S. Department of State is a federal cabinet agency responsible for implementing the U.S. Refugee Admissions Program and the Executive Order that is the subject of this Complaint.  The Department of State is a Department of the Executive Branch of the United States Government, and is an agency within the meaning of 5 U.S.C. § 552(f).

25.     Defendant Rex Tillerson is the Secretary of State.  He oversees the Department of State's implementation of the U.S. Refugee Admissions Program and the Executive Order that is the subject of this Complaint.  The Secretary of State has authority to determine and implement certain visa procedures for non-citizens.  Secretary Tillerson is sued in his official capacity.

26.     Defendant United States of America includes all government agencies and departments responsible for the implementation of the INA, and for detention and removal of non-citizens from Iran, Iraq, Syria, Somalia, Sudan, Libya, and Yemen who arrive at air, land, and sea ports across the United States, including Honolulu International Airport and Kona International Airport.

## ALLEGATIONS

### A.     President Trump's Campaign Promises

27.     President Trump repeatedly campaigned on the promise that he would ban Muslim immigrants and refugees from entering the United States, particularly from Syria, and maintained the same rhetoric after he was elected.

28.     On July 11, 2015, Mr. Trump claimed (falsely) that Christian refugees from Syria are blocked from entering the United States.  In a speech in Las Vegas, Mr. Trump said, "If you're from Syria and you're a Christian, you cannot come

into this country, and they're the ones that are being decimated.  If you are
Islamic . . . it's hard to believe, you can come in so easily."[11]

29.     On September 30, 2015, while speaking in New Hampshire about the
10,000 Syrian refugees the Obama Administration had accepted for 2016, Mr.
Trump said "if I win, they're going back!"  He said "they could be ISIS," and
referred to Syrian refugees as a "200,000-man army."[12]

30.     On December 7, 2015, shortly after the terror attacks in Paris, Mr.
Trump issued a press release entitled: "Donald J. Trump Statement on Preventing
Muslim Immigration."[13]  The press release stated: "Donald J. Trump is calling for
a total and complete shutdown of Muslims entering the United States . . . ."  The
release asserted that "there is great hatred towards Americans by large segments of
the Muslim population."  The press release remains accessible on
www.donaldjtrump.com as of this filing.

31.     The next day, when questioned about the proposed "shutdown," Mr.
Trump compared his proposal to President Franklin Roosevelt's internment of
Japanese Americans during World War II, saying, "[Roosevelt] did the same
thing."[14]  When asked what the customs process would look like for a Muslim non-
citizen attempting to enter the United States, Mr. Trump said, "[T]hey would say,

---

[11] Louis Jacobson, *Donald Trump says if you're from Syria and a Christian, you
can't come to the U.S. as a refugee*, Politifact (July 20, 2015 10:00 AM ET),
https://goo.gl/fucYZP.
[12] Ali Vitali, *Donald Trump in New Hampshire: Syrian Refugees Are 'Going Back*,
NBC News (Oct. 1, 2015 7:33 AM ET), https://goo.gl/4XSeGX.
[13] Press Release, Donald J. Trump for President, *Donald J. Trump Statement on
Preventing Muslim Immigration* (Dec. 7, 2015), *available at* https://goo.gl/D3OdJJ.
A copy of this press release is attached as Exhibit 5.
[14] Jenna Johnson, *Donald Trump says he is not bothered by comparisons to Hitler*,
The Washington Post (Dec. 8, 2016), https://goo.gl/6G0oH7.

are you Muslim?"  The interviewer responded: "And if they said 'yes,' they would not be allowed into the country."  Mr. Trump said: "That's correct."[15]

32.    During a Republican primary debate in January 2016, Mr. Trump was asked about how his "comments about banning Muslims from entering the country created a firestorm," and whether he wanted to "rethink this position."  He said, "No."[16]

33.    A few months later, in March 2016, Mr. Trump said, during an interview, "I think Islam hates us."  Mr. Trump was asked, "Is there a war between the West and radical Islam, or between the West and Islam itself?"  He replied: "It's very hard to separate.  Because you don't know who's who."[17]

34.    Later, as the presumptive Republican nominee, Trump began using facially neutral language, at times, to describe the Muslim ban.  Following the mass shootings at an Orlando nightclub in June 2016, Mr. Trump gave a speech promising to "suspend immigration from areas of the world where there's a proven history of terrorism against the United States, Europe or our allies until we fully understand how to end these threats."  But he continued to link that idea to the need to stop "importing radical Islamic terrorism to the West through a failed immigration system."  He said that "to protect the quality of life for all Americans—women and children, gay and straight, Jews and Christians and all people then we need to tell the truth about radical Islam."  And he criticized Hillary Clinton for, as he described it, "her refusal to say the words 'radical

[15] Nick Gass, *Trump not bothered by comparisons to Hitler*, Politico (Dec. 8, 2015 7:51 AM ET), https://goo.gl/IkBzPO.

[16] The American Presidency Project, *Presidential Candidates Debates: Republican Candidates Debate in North Charleston, South Carolina* (January 14, 2016), https://goo.gl/se0aCX.

[17] *Anderson Cooper 360 Degrees: Exclusive Interview With Donald Trump* (CNN television broadcast Mar. 9, 2016 8:00 PM ET), *transcript available at* https://goo.gl/y7s2kQ.

Islam,'" stating: "Here is what she said, exact quote, 'Muslims are peaceful and tolerant people, and have nothing whatsoever to do with terrorism.' That is Hillary Clinton." Mr. Trump further stated that the Obama administration had "put political correctness above common sense," but said that he "refuse[d] to be politically correct."

35.    Mr. Trump's June 2016 speech also covered refugees. He said that "[e]ach year the United States permanently admits 100,000 immigrants from the Middle East and many more from Muslim countries outside of the Middle East. Our government has been admitting ever-growing numbers, year after year, without any effective plan for our own security."[18] He issued a press release stating: "We have to stop the tremendous flow of Syrian refugees into the United States."[19]

36.    Later, on July 24, 2016, Mr. Trump was asked: "The Muslim ban. I think you've pulled back from it, but you tell me." Mr. Trump responded: "I don't think it's a rollback. In fact, you could say it's an expansion. I'm looking now at territories. People were so upset when I used the word Muslim. Oh, you can't use the word Muslim. Remember this. And I'm okay with that, because I'm talking territory instead of Muslim."[20]

37.    During an October 9, 2016 Presidential Debate, Mr. Trump was asked: "Your running mate said this week that the Muslim ban is no longer your position. Is that correct? And if it is, was it a mistake to have a religious test?" Mr. Trump

---

[18] Ryan Teague Beckwith, *Read Donald Trump's Speech on the Orlando Shooting*, Time (June 13, 2016 4:36 PM ET), https://goo.gl/kgHKrb.
[19] Press Release, Donald J. Trump for President, *Donald J. Trump Addresses Terrorism, Immigration, and National Security* (June 13, 2016), *available at* https://goo.gl/GcrFhw.
[20] *Meet the Press* (NBC television broadcast July 24, 2016), *transcript available at* https://goo.gl/jHc6aU. A copy of this transcript is attached as Exhibit 6.

replied: "The Muslim ban is something that in some form has morphed into a[n] extreme vetting from certain areas of the world."  When asked to clarify whether "the Muslim ban still stands," Mr. Trump said, "It's called extreme vetting."[21]

38.     Then, on December 21, 2016, following terror attacks in Berlin, Mr. Trump was asked whether he had decided "to rethink or re-evaluate [his] plans to create a Muslim registry or ban Muslim immigration to the United States."  Mr. Trump replied: "You know my plans.  All along, I've been proven to be right."[22]

**B.     President Trump's Executive Order**

39.     Within a week of being sworn in, President Trump acted upon his ominous campaign promises to restrict Muslim immigration, curb refugee admissions, and prioritize non-Muslim refugees.

40.     In an interview on January 25, 2017, Mr. Trump discussed his plans to implement "extreme vetting" of people seeking entry into the United States.  He remarked:  "[N]o, it's not the Muslim ban.  But it's countries that have tremendous terror. . . . [I]t's countries that people are going to come in and cause us tremendous problems."[23]

41.     Two days later, on January 27, 2017, President Trump signed the Executive Order that is the subject of this Complaint, which is entitled "Protecting the Nation From Terrorist Entry into the United States."

42.     The Executive Order was issued without a notice and comment period and without interagency review.  Moreover, the Executive Order was issued with little explanation of how it could further its stated objective.

---

[21] The American Presidency Project, *Presidential Debates: Presidential Debate at Washington University in St. Louis, Missouri* (Oct. 9, 2016), https://goo.gl/iIzf0A.
[22] *President-Elect Trump Remarks in Palm Beach, Florida*, C-SPAN (Dec. 21, 2016), https://goo.gl/JlMCst.
[23] *Transcript: ABC News Anchor David Muir Interviews President Trump*, ABC News (Jan. 25, 2017, 10:25 PM ET), https://goo.gl/NUzSpq.

43.     When signing the Executive Order, President Trump read the title, looked up, and said: "We all know what that means."[24]  President Trump said he was "establishing a new vetting measure to keep radical Islamic terrorists out of the United States of America," and that: "We don't want them here."[25]

44.     Section 3 of the Executive Order is entitled "Suspension of Issuance of Visas and Other Immigration Benefits to Nationals of Countries of Particular Concern."  Section 3(c) "suspends entry into the United States, as immigrants and nonimmigrants" of persons from countries referred to in Section 217(a)(12) of the INA [8 U.S.C. § 1187(a)(12)], that is: Iran, Iraq, Libya, Somalia, Sudan, Syria, and Yemen.

45.     The majority of the population in each of these seven countries is Muslim.

46.     Not a single fatal terrorist attack has been perpetrated in the United States by a national of one of these seven countries since at least 1975.[26]  Other countries whose nationals have perpetrated fatal terrorist attacks in the United States are not part of the immigration ban.[27]

47.     Section 3(c) means that Lawful Permanent Residents, foreign students enrolled in U.S. universities (including in Hawai'i), individuals employed in the United States on temporary work visas, and others must be halted at the border if

---

[24] *Trump Signs Executive Orders at Pentagon*, ABC News (Jan. 27, 2017), https://goo.gl/7Jzird.
[25] Sarah Pulliam Bailey, *Trump signs order limiting refugee entry, says he will prioritize Christian refugees*, The Washington Post (Jan. 27, 2017), https://goo.gl/WF2hmS.
[26] Alex Nowrasteh, *Little National Security Benefit to Trump's Executive Order on Immigration*, Cato Institute Blog (Jan. 25, 2017 3:31 PM ET), https://goo.gl/BCv6rQ.
[27] Scott Schane, *Immigration Ban Is Unlikely to Reduce Terrorist Threat, Experts Say*, N.Y. Times (Jan. 28, 2017), https://goo.gl/MBvOTk.

they arrive in the United States (in Hawaiʻi or elsewhere) from one of the seven designated countries, including if he or she leaves the country and tries to return. Section 3(g) allows the Secretaries of State and Homeland Security to make exceptions when they determine that doing so is "in the national interest."

48.     The Executive Order also provides for an expansion of the immigration ban to nationals from additional countries.  Section 3(d) directs the Secretary of State to (within about 30 days) "request [that] all foreign governments" provide the United States with information to determine whether a person is a security threat.  And, should any countries fail to comply, Section 3(e) directs the Secretaries of Homeland Security and State to "submit to the President a list of countries recommended for inclusion" in the ban from among any countries who do not provide the information requested.

49.     Section 3(f) gives the Secretary of State and the Secretary of Homeland Security further authority to "submit to the President the names of any additional countries recommended for similar treatment" in the future.

50.     Section 5 of the Executive Order is entitled "Realignment of the U.S. Refugee Admissions Program for Fiscal Year 2017."  Section 5(a) directs the Secretary of State to "suspend the U.S. Refugee Admissions Program (USRAP) for 120 days."  Section 5(e) permits the Secretaries of State and Homeland Security to admit individuals as refugees on a case-by-case basis, but only if they determine that admission of the refugee is in the "national interest," including "when the person is a religious minority in his country of nationality facing religious persecution."

51.     Section 5(b) directs the Secretaries of State and Homeland Security, "[u]pon resumption of USRAP admissions," to "prioritize refugee claims made by individuals on the basis of religious-based persecution, provided that the religion of the individual is a minority religion in the individual's country of nationality."

12

In Section 5(c), President Trump "proclaim[s] that the entry of nationals of Syria as refugees is detrimental to the interests of the United States and thus suspends any such entry" indefinitely.

52.    The restrictions in Sections 3 and 5 of the Executive Order apply whether or not a non-citizen poses any individualized threat of violence, or has any connection to terrorist activities in any way.

53.    In a January 27, 2017 interview with Christian Broadcasting Network, President Trump said that persecuted Christians would be given priority under the Executive Order.  He said (once again, falsely): "Do you know if you were a Christian in Syria it was impossible, at least very tough to get into the United States?  If you were a Muslim you could come in, but if you were a Christian, it was almost impossible and the reason that was so unfair, everybody was persecuted in all fairness, but they were chopping off the heads of everybody but more so the Christians.  And I thought it was very, very unfair.  So we are going to help them."[28]

54.    The day after signing the Executive Order, President Trump advisor Rudolph Giuliani explained on television how the Executive Order came to be.  He said:  "When [Mr. Trump] first announced it, he said, 'Muslim ban.'  He called me up.  He said, 'Put a commission together.  Show me the right way to do it legally.'"[29]

---

[28] *Brody File Exclusive: President Trump Says Persecuted Christians Will Be Given Priority as Refugees*, Christian Broadcasting Network (Jan. 27, 2017), https://goo.gl/2GLB5q.  A printout of this webpage is attached as Exhibit 7. Additional pages including advertisements, reader comments, and other extraneous material are omitted.

[29] Amy B. Wang, *Trump asked for a 'Muslim ban,' Giuliani says – and ordered a commission to do it 'legally'*, The Washington Post (Jan. 29, 2017), https://goo.gl/Xog80h.  A copy of this article is attached as Exhibit 8.

## C.   Effects of the Executive Order

55.   Upon issuance of the Executive Order, Defendants began detaining people at U.S. airports who, but for the Executive Order, were legally entitled to enter the United States.  Some were also removed from the United States. Estimates indicate that over 100 people were detained upon arrival at U.S. airports.[30]

56.   Defendants have not afforded people an opportunity to apply for asylum, withholding of removal, or other relief before removing them, and have even prevented detained individuals from speaking with their attorneys.

57.   Among others, Defendants have detained and/or removed:

a.   Lawful permanent residents, including dozens at Dulles International Airport in Virginia,[31] and others at Los Angeles International Airport who were pressured to sign Form I-407 to *relinquish* their green cards;[32]

b.   People with special immigrant visas, including an Iraqi national at John F. Kennedy International Airport who worked as an interpreter for the U.S. Army in Iraq;[33]

c.   A doctor at the Cleveland Clinic with a valid work visa who was trying to return home from vacation;[34]

---

[30] Michael D. Shear et al., *Judge Blocks Trump Order on Refugees Amid Chaos and Outcry Worldwide*, N.Y. Times (Jan. 28, 2017), https://goo.gl/OrUJEr.

[31] *See, e.g.*, Petition ¶ 2, *Aziz v. Trump*, No. 1:17-cv-116 (E.D. Va. Jan. 28, 2017).

[32] Leslie Berestein Rojas et al., *LAX immigration agents asks detainees to sign away their legal residency status, attorneys say*, Southern California Public Radio News (Jan. 30, 2017), https://goo.gl/v6JoUC; Brenda Gazzar & Cynthia Washicko, *Thousands protest Trump's immigration order at LAX*, Los Angeles Daily News (Jan. 29, 2017), https://goo.gl/1vA37M.

[33] *See, e.g.*, Petition 2, *Darweesh v. Trump*, No. 1:17-cv-00480 (E.D.N.Y. Jan. 28, 2017).

     d.     People with valid visas to visit family in the United States, including a Syrian woman sent to Saudi Arabia after being convinced by officials at O'Hare International Airport to sign paperwork cancelling her visa.[35]

58.     People overseas were blocked from boarding flights to the United States or told they could no longer come here.  At a hearing in the U.S. District Court for the Eastern District of Virginia on February 3, 2017, an attorney for the Federal Government revealed that over 100,000 visas have been revoked since the Executive Order was signed a week earlier on January 27.[36]  Those affected included:

     a.     People with valid student, work, or visitor visas;

     b.     People who could seek asylum in the United States;

     c.     Syrian refugees with visas and U.S. placements lined up, including a family assisted by a church in Sheboygan, Wisconsin;[37]

     d.     Parents seeking to reunite with children they were forced to leave behind, or have never met;[38] and

---

[34] Jane Morice, *Two Cleveland Clinic doctors vacationing in Iran detained in New York, then released*, Cleveland.com (Jan. 29, 2017), https://goo.gl/f0EGV3.

[35] John Rogers, *Longtime US residents, aspiring citizens caught up in ban*, StarTribune (Jan. 30, 2017 1:45 AM ET), https://goo.gl/eEPAuE.

[36] Rachael Revesz, *Donald Trump immigration ban: More than 100,000 visas revoked after travel restrictions imposed on seven Muslim-majority countries*, The Independent (Feb. 3, 2017 1:24 PM ET), https://goo.gl/5KnCUh.

[37] *Families, students, scientists: Faces of the immigration ban*, USA Today Network (Jan. 31, 2017 5:35 AM ET), https://goo.gl/VKuhds.

[38] *Refugees Anticipate Family Reunions, Instead Endure Doubt*, ABC News (Jan. 31, 2017 4:56 PM ET), https://goo.gl/3JT6iC.

   e. People caught in limbo because they cannot enter the United States, return to their native country, or stay much longer where they are on temporary visas.[39]

 59. Confusion, backlash, and habeas corpus litigation arose in the wake of the Executive Order, including with regard to whether the Executive Order applied to lawful permanent residents.  Within the first 72 hours that the Executive Order was in effect, Defendants reportedly changed their minds three times about whether it did.[40]

 60. Hundreds of State Department officials signed a memorandum circulated through the State Department's "Dissent Channel" stating that the Executive Order "runs counter to core American values" including "nondiscrimination," and that "[d]espite the Executive Order's focus on them, a vanishingly small number of terror attacks on U.S. soil have been committed by foreign nationals" here on visas.[41]

 61. Likewise, Senators John McCain (R-AZ) and Lindsey Graham (R-SC) stated: "This executive order sends a signal, intended or not, that America does not want Muslims coming into our country."[42]

 62. DHS Secretary Kelly issued a press release on Sunday, January 29, 2017, stating that: "In applying the provisions of the president's executive order, I

---

[39] Jamie Doward, *US-bound migrants blocked from flying to JFK airport*, The Guardian (Jan. 28, 2017), https://goo.gl/pWu0NZ.

[40] Evan Perez et al., *Inside the confusion of the Trump executive order and travel ban*, CNN Politics (Jan. 30, 2017 11:29 AM ET), https://goo.gl/Z3kYEC.  A printed copy of this article is attached as Exhibit 9.

[41] Jeffrey Gettleman, *State Department Dissent Cable on Trump's Ban Draws 1,000 Signatures*, N.Y. Times (Jan. 31, 2017), https://goo.gl/svRdIw.  A copy of the Dissent Channel memorandum is attached as Exhibit 10.

[42] Press Release, Senator John McCain, *Statement By Senators McCain & Graham On Executive Order On Immigration* (Jan. 29, 2017), *available at* https://goo.gl/EvHvmc.

hereby deem the entry of lawful permanent residents to be in the national interest. Accordingly, absent the receipt of significant derogatory information indicating a serious threat to public safety and welfare, lawful permanent resident status will be a dispositive factor in our case-by-case determinations."[43]

63.     Secretary Kelly's statement thus indicated that the Executive Order *does* apply to lawful permanent residents from the designated countries, and only the Secretary's determination under Section 3(g) that admission of lawful permanent residents, absent certain information reviewed on a case-by-case basis, is in the national interest, allows them to enter.

64.     Then, on February 1, 2017, the White House issued a Memorandum taking yet another position on green-card holders, now purporting to "clarify" that such persons were never covered by Sections 3 and 5 of the Order.

65.     Because of the Executive Order, non-citizens from the seven designated countries who are legally present in the United States  cannot leave the country for family, educational, religious, or business reasons if they wish to return.

66.     Among others, people planning to travel overseas on *ummas*, a Muslim pilgrimage, are unsure whether they can make the trip.[44]

67.     Defendants are enforcing the Executive Order on Hawai'i soil, including at Honolulu and Kona International Airports.

68.     Hawai'i is home to numerous non-citizens from the seven designated countries—legal permanent residents, foreign students, and temporary workers—whose lives have now been upended by the Executive Order. Some non-citizens have been forced to cancel or postpone travel plans. Others may be forced to

---

[43] Press Release, U.S. Department of Homeland Security, *Statement By Secretary John Kelly On The Entry Of Lawful Permanent Residents Into The United States* (Jan. 29, 2017), *available at* https://goo.gl/6krafi. A copy of this press release is attached as Exhibit 11.
[44] *US-bound migrants blocked from flying to JFK airport*, *supra*.

abandon their studies at Hawaii's universities in order to be reunited with immediate family members abroad.

69.    Conversely, nationals of the seven designated countries cannot relocate to or even visit Hawaiʻi for family, educational, religious, or business reasons.  As a result, the Executive Order is blocking Hawaiʻi residents—including U.S. citizens—from reunifying with their families.

70.    Both citizens and non-citizens living in Hawaiʻi are harmed by the Executive Order.

71.    As a result of the Order, the airport facilities provided by Hawaii's State Department of Transportation for international passengers coming into Hawaiʻi will be used by the federal government to carry out the unlawful acts required by the Executive Order.

72.    As a result of the Executive Order, State universities and State agencies cannot accept qualified applicants for open positions—as students, researchers, post-docs, faculty members, or employees—if they are residents of one of the seven designated countries.   This contravenes policies at the State's universities and agencies to promote diversity and recruit talent from abroad.[45]

73.    Beyond universities and government entities, other employers within the State cannot recruit and/or hire workers from the seven designated countries.

74.    The University of Hawaiʻi and other State learning institutions depend on the collaborative exchange of ideas, including among people of different

---

[45] *See, e.g.*, State of Hawaiʻi, Department of Human Resources Development, Policy No. 601.001: Discrimination / Harassment-Free Workplace Policy (revised Nov. 16, 2016), *available at* https://goo.gl/7q6yzJ; University of Hawaiʻi, Mānoa, Policy M1.100: Non-Discrimination and Affirmative Action Policy, *available at* https://goo.gl/6YqVl8 (last visited Feb. 2, 2017 8:27 PM ET); *see also, e.g.*, *Campus Life: Diversity*, University of Hawaiʻi, Mānoa, https://goo.gl/3nF5C9 (last visited Feb. 2, 2017 8:27 PM ET).

religions and national backgrounds.  For this reason, the University of Hawai'i has study abroad or exchange programs in over thirty countries, and international agreements for faculty collaboration with over 350 international institutions spanning forty different countries.   The Executive Order threatens such educational collaboration and harms the ability of the University of Hawai'i to fulfill its educational mission.

75.     The Executive Order is depressing international travel to and tourism in Hawai'i.  Hawai'i can no longer welcome tourists from the seven designated countries.  This directly harms Hawai'i businesses and, in turn, the State's revenue. In 2015 alone, Hawai'i welcomed over 6,800 visitors from the Middle East and over 2,000 visitors from Africa.

76.     Even with respect to countries not currently targeted by the Executive Order, there is a likely "chilling effect" on tourism to the United States and to Hawai'i.  Non-citizen Muslims in the United States who would otherwise consider taking vacations will be less likely to travel using airports, and thus less likely to visit Hawai'i.  The Executive Order also contemplates an expansion of the immigration ban and in fact authorizes the Secretaries of State and Homeland Security to recommend additional countries for inclusion in the near future.  This likely instills fear and a disinclination to travel to the United States among foreigners in other countries that President Trump has been hostile towards—i.e., residents of other Muslims countries, China, and Mexico.

77.     The Executive Order gives rise to a global perception that the United States is an exclusionary country, and it dampens the appetite for international travel here generally.

78.     A decrease in national and international tourism would have a severe impact on Hawaii's economy.

79.    The Executive Order also throttles the efforts of the State and its

residents to resettle and assist refugees.  Refugees from numerous countries,

including Iraq, have resettled in Hawai'i in recent years.[46]  While the State's

refugee program is small, it is an important part of the State's culture, and aiding

refugees is central to the mission of private Hawai'i organizations like Catholic

Charities Hawai'i and the Pacific Gateway Center.[47]  In late 2015, as other states

objected to the admission of Syrian refugees, Governor Ige issued a statement that

"slamming the door in their face would be a betrayal of our values."  Governor Ige

explained:  "Hawai'i and our nation have a long history of welcoming refugees

impacted by war and oppression.  Hawai'i is the Aloha State, known for its

tradition of welcoming all people with tolerance and mutual respect."[48]  But as

long as the Executive Order prohibits refugee admissions, the State and its

residents are prevented from helping refugees resettle in Hawai'i.

80.    In the event refugee admissions resume, the Executive Order

promotes the admission of Christian refugees and impedes the admission of

Muslim refugees.  The Executive Order thus establishes a preference by the

Federal Government for Christianity and against Islam, despite the Establishment

Clauses of the Constitutions of the State of Hawai'i and the United States.

81.    President Trump's Executive Order is antithetical to Hawai'i's state

identity and spirit.  For many in Hawai'i, including State officials, the Executive

Order conjures up the memory of the Chinese Exclusion Acts and the imposition of

---

[46] U.S. Department of Health & Human Servs., Office of Refugee Resettlement,
*Overseas Refugee Arrival Data: Fiscal Years 2012-2015*, *available at*
https://goo.gl/JcgkDM.

[47] *See About: Our History*, Catholic Charities Hawai'i, https://goo.gl/deVBla (last
visited Feb. 2, 2017 8:28 PM ET); *About: Mission*, Pacific Gateway Center,
https://goo.gl/J8bN5k (last visited Feb. 2, 2017 8:29 PM ET).

[48] Press Release, Governor of the State of Hawai'i, *Governor David Ige's
Statement On Syrian Refugees* (Nov. 16, 2015), *available at* https://goo.gl/gJcMIv.

martial law and Japanese internment after the bombing of Pearl Harbor.  As Governor Ige expressed two days after President Trump issued the Executive Order, "Hawai'i has a proud history as a place immigrants of diverse backgrounds can achieve their dreams through hard work.  Many of our people also know all too well the consequences of giving in to fear of newcomers. The remains of the internment camp at Honouliuli are a sad testament to that fear.  We must remain true to our values and be vigilant where we see the worst part of history about to be repeated."[49]

82.    If the State had the power to unilaterally address the problems raised by the Executive Order, it would.  But because power over immigration is largely lodged in the Federal Government, litigation against the Federal Government is the only way for the State to vindicate its interests and those of its citizens.

## CAUSES OF ACTION

## COUNT I

### (First Amendment – Establishment Clause)

83.    The foregoing allegations are realleged and incorporated by reference herein.

84.    The Establishment Clause of the First Amendment prohibits the Federal Government from officially preferring one religion over another.

85.    Sections 3 and 5 of the Executive Order, as well as Defendants' statements regarding the Executive Order and their actions to implement it, are intended to disfavor Islam and favor Christianity.

---

[49] Press Release, Governor of the State of Hawai'i, *Statement of Governor David Ige On Immigration To The United States* (Jan. 29, 2017), *available at* https://goo.gl/62w1fh.

86.     Sections 3 and 5 of the Executive Order, as well as Defendants' statements regarding the Executive Order and their actions to implement it, have the effect of disfavoring Islam and favoring Christianity.

87.     Through their actions described in this Complaint, Defendants have violated the Establishment Clause.  Defendants' violation inflicts ongoing harm upon Hawai'i residents and the sovereign interests of the State of Hawai'i.

## COUNT II

### (Fifth Amendment – Equal Protection)

88.     The foregoing allegations are realleged and incorporated by reference herein.

89.     The Due Process Clause of the Fifth Amendment prohibits the Federal Government from denying equal protection of the laws, including on the basis of religion or national origin.

90.     The Executive Order was motivated by animus and a desire to discriminate on the basis of religion and/or national origin.

91.     The Executive Order differentiates between people based on their religion and/or national origin and is accordingly subject to strict scrutiny.  It fails that test, because it is over- and under-inclusive in restricting immigration for security reasons, and the statements by President Trump and his advisors provide direct evidence of the Executive Order's discriminatory motivations.

92.     For the same reason, the Executive Order is not rationally related to a legitimate government interest.

93.     Sections 3 and 5 of the Executive Order, as well as Defendants' statements regarding the Executive Order and their actions to implement it, discriminate against individuals based on their religion and/or national origin without lawful justification.

94.     Through their actions described in this Complaint, Defendants have violated the Equal Protection guarantees of the Fifth Amendment.  Defendants' violation inflicts ongoing harm upon Hawai'i residents and the sovereign interests of the State of Hawai'i.

## COUNT III

### (Fifth Amendment – Substantive Due Process)

95.     The foregoing allegations are realleged and incorporated by reference herein.

96.     The right to international travel is protected by the Due Process Clause of the Fifth Amendment.

97.     The Executive Order directly curtails that right, without any legal justification.

98.     Through their actions described in this Complaint, Defendants have violated the Substantive Due Process guarantees of the Fifth Amendment. Defendants' violation inflicts ongoing harm upon Hawai'i residents and the sovereign interests of the State of Hawai'i.

## COUNT IV

### (Fifth Amendment – Procedural Due Process)

99.     The foregoing allegations are realleged and incorporated by reference herein.

100.    The Due Process Clause of the Fifth Amendment prohibits the Federal Government from depriving individuals of liberty interests without due process of law.

101.    Non-citizens, including lawful permanent residents and non-immigrants holding valid visas, have a liberty interest in leaving and reentering the country, and in being free from unlawful detention.

102.   The Due Process Clause establishes a minimum level of procedural protection before those liberty interests can be deprived.  A non-citizen must be given an opportunity to present her case effectively, which includes a hearing and some consideration of individual circumstances.

103.   In addition, where Congress has granted statutory rights and authorized procedures applicable to arriving and present non-citizens, rights under the Due Process Clause attach to those statutory rights.

104.   Sections 3 and 5 of the Executive Order, and Defendants' actions implementing the Executive Order, deprive non-citizens arriving in the United States, including in Hawai'i, of their statutory rights to apply for asylum and withholding of removal in the United States.

105.   Through their actions described in this Complaint, Defendants have violated the Procedural Due Process guarantees of the Fifth Amendment. Defendants' violation inflicts ongoing harm upon Hawai'i residents and the sovereign interests of the State of Hawai'i.

## COUNT V
### (Substantive Violation of the Administrative Procedure Act through Violations of the Constitution, Immigration and Nationality Act, and Arbitrary and Capricious Action)

106.   The foregoing allegations are realleged and incorporated by reference herein.

107.   The APA requires courts to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege, or immunity"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A)-(C).

108.   In enacting and implementing Sections 3 and 5 of the Executive Order, Defendants have acted contrary to the Establishment Clause and Fifth Amendment of the United States Constitution.

109.   In enacting and implementing Sections 3 and 5 of the Executive Order, Defendants have acted contrary to the INA and the United Nations Protocol Relating to the Status of Refugees.  Defendants have exceeded their statutory authority, engaged in nationality- and religion-based discrimination, and failed to vindicate statutory rights guaranteed by the INA.

110.   Further, in enacting and implementing Sections 3 and 5 of the Executive Order, Defendants have acted arbitrarily and capriciously.  Among other arbitrary actions and omissions, Defendants have offered no explanation for the countries that are and are not included within the scope of the Executive Order. The Executive Order purports to protect the country from terrorism, but sweeps in millions of people who have absolutely no connection to terrorism.  And while Defendants have reversed course in their application of the Executive Order to lawful permanent residents, Defendants again acted without explanation, and have yet to explain how all other people with valid visas to enter the country pose a security threat.

111.   Through their actions described in this Complaint, Defendants have violated the substantive requirements of the APA.  Defendants' violation inflicts ongoing harm upon Hawai'i residents and the sovereign interests of the State of Hawai'i.

## COUNT VII

### (Procedural Violation of the Administrative Procedure Act)

112.   The foregoing allegations are realleged and incorporated by reference herein.

113.   The APA requires courts to hold unlawful and set aside any agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

114.   The Departments of State and Homeland Security are "agencies" under the APA. *See* 5 U.S.C. § 551(1).

115.   The APA requires that agencies follow rulemaking procedures before engaging in action that impacts substantive rights. *See* 5 U.S.C. § 553.

116.   In implementing Sections 3 and 5 of the Executive Order, federal agencies have changed the substantive criteria by which individuals from the seven designated countries may enter the United States. This, among other actions by Defendants, impacts substantive rights.

117.   Defendants did not follow the rulemaking procedures required by the APA in enacting and implementing the Executive Order.

118.   Through their actions described in this Complaint, Defendants have violated the procedural requirements of the APA. Defendants' violation inflicts ongoing harm upon Hawai'i residents and the sovereign interests of the State of Hawai'i.

## **PRAYER FOR RELIEF**

119.   WHEREFORE, the State of Hawai'i prays that the Court:

  a.   Declare that Sections 3(c), 5(a)-(c), and 5(e) of President Trump's Executive Order are unauthorized by, and contrary to, the Constitution and laws of the United States;

  b.   Enjoin Defendants from implementing or enforcing Sections 3(c), 5(a)-(c), and 5(e) across the nation;

  c.   Pursuant to Federal Rule of Civil Procedure 65(b)(2), set an expedited hearing within fourteen (14) days to determine

whether the Temporary Restraining Order should be extended; and

d.      Award such additional relief as the interests of justice may require.

DATED:      Honolulu, Hawaiʻi, February 3, 2017.

Respectfully submitted,

*/s/ Douglas S. Chin*

NEAL K. KATYAL*                    DOUGLAS S. CHIN (Bar No. 6465)
COLLEEN ROH SINZDAK*          Attorney General of the State of Hawaiʻi
MITCHELL P. REICH*               CLYDE J. WADSWORTH (Bar No. 8495)
ELIZABETH HAGERTY*               Solicitor General of the State of Hawaiʻi
THOMAS P. SCHMIDT*               DEIRDRE MARIE-IHA (Bar No. 7923)
SARA SOLOW*                       KIMBERLY T. GUIDRY (Bar No. 7813)
ALEXANDER B. BOWERMAN*        DONNA H. KALAMA (Bar No. 6051)
HOGAN LOVELLS US LLP             ROBERT T. NAKATSUJI (Bar No. 6743)
                                   Deputy Attorneys General
*Pro Hac Vice Applications        DEPARTMENT OF THE ATTORNEY
  Forthcoming                      GENERAL, STATE OF HAWAIʻI

*Attorneys for Plaintiff, State of Hawaiʻi*