DOUGLAS S. CHIN (Bar No. 6465)
  Attorney General of the State of Hawai'i
DEPARTMENT OF THE ATTORNEY
  GENERAL, STATE OF HAWAI'I
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1500
Fax: (808) 586-1239
  *Attorneys for Plaintiff, State of Hawai'i*

NEAL K. KATYAL*
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
*Admitted Pro Hac Vice*

  *Attorneys for Plaintiffs, State of Hawai'i and Ismail Elshikh*

(See Next Page For Additional Counsel)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I**

| | |
|---|---|
| STATE OF HAWAI'I and ISMAIL ELSHIKH,<br>            Plaintiffs,<br><br>     v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN F. KELLY, in his official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF STATE; REX TILLERSON, in his official capacity as Secretary of State; and the UNITED STATES OF AMERICA,<br>            Defendants. | Civil Action No. 1:17-cv-00050-DKW-KSC<br>**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO CLARIFY SCOPE OF PRELIMINARY INJUNCTION** |

# **ADDITIONAL COUNSEL**

CLYDE J. WADSWORTH (Bar No. 8495)
Solicitor General of the State of Hawaiʻi
DEIRDRE MARIE-IHA (Bar No. 7923)
DONNA H. KALAMA (Bar No. 6051)
KIMBERLY T. GUIDRY (Bar No. 7813)
ROBERT T. NAKATSUJI (Bar No. 6743)
　Deputy Attorneys General
DEPARTMENT OF THE ATTORNEY
　GENERAL, STATE OF HAWAIʻI
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1500
Fax: (808) 586-1239
Email: deirdre.marie-iha@hawaii.gov

*Attorneys for Plaintiff, State of Hawaiʻi*

COLLEEN ROH SINZDAK*
MITCHELL P. REICH*
ELIZABETH HAGERTY*
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Fax: (202) 637-5910
Email:
neal.katyal@hoganlovells.com

THOMAS P. SCHMIDT*
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
Fax: (212) 918-3100

SARA SOLOW*
ALEXANDER B. BOWERMAN*
HOGAN LOVELLS US LLP
1835 Market St., 29th Floor
Philadelphia, PA 19103
Telephone: (267) 675-4600
Fax: (267) 675-4601

*\*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs, State of
　Hawaiʻi and Ismail Elshikh*

# **MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO CLARIFY SCOPE OF PRELIMINARY INJUNCTION**

## **INTRODUCTION**

Three months ago, this Court enjoined the Government "from enforcing or implementing Sections 2 and 6" of Executive Order 13,780. Dkt. 270, at 23. On June 26, 2017, the Supreme Court stayed that injunction with respect to "foreign nationals abroad who have *no* connection to the United States," but it reaffirmed that section 2(c), 6(a), and 6(b) of the President's Order "may *not* be enforced against foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States." *Trump* v. *Int'l Refugee Assistance Project* ("*IRAP*"), Nos. 16-1436 and 16-1540, slip op. at 11-13 (June 26, 2017) (per curiam). That standard, the Supreme Court made clear, protects any foreign national with a "close familial relationship" with a person in the United States, including Dr. Elshikh's mother-in-law. *Id*. at 11-12.

A few hours ago, after days of stonewalling Plaintiffs' repeated requests for information, the Government announced that it intended to violate the Supreme Court's instruction. Beginning at 8:00 p.m. EDT, it will apply the Executive Order to exclude a host of aliens with a "close familial relationship" to U.S. persons, including grandparents and grandchildren, brothers- and sisters-in-law, fiancés, aunts, uncles, nieces, nephews, and cousins. The Government will also exclude

refugees who have a "bona fide relationship" with a U.S. resettlement agency—including refugees who already have a documented agreement with a local sponsor and a place to live. And despite the Supreme Court's claim that a foreign national cannot be blocked by the Order if he or she "credibl[y] claim[s]" a bona fide relationship with a U.S. person, the Government has instructed consulates to deny aliens entry whenever they are "unsure" if such a connection exists.

The Government does not have discretion to ignore the Court's injunction as it sees fit. The State of Hawaii is entitled to the enforcement of the injunction that it has successfully defended, in large part, up to the Supreme Court—one that protects the State's residents and their loved ones from an illegal and unconstitutional Executive Order. And Dr. Elshikh is entitled to the assurance that that same injunction will continue to protect the members of his mosque and his community from discrimination based on their faith. This Court should clarify as soon as possible that the Supreme Court meant what it said, and that foreign nationals that credibly claim connections with this country cannot be denied entry under the President's illegal Order.

## BACKGROUND

### A.  This Court's Injunction

On March 29, 2017, this Court issued a preliminary injunction prohibiting the Defendants "from enforcing or implementing Sections 2 and 6 of the Executive

Order across the Nation." Dkt. 270, at 23. The Ninth Circuit affirmed that injunction in substantial part, but it "vacate[d] the portions of the injunction that prevent the Government from conducting internal reviews, as otherwise directed in Sections 2 and 6, and the injunction to the extent that it runs against the President." *Hawaii* v. *Trump*, slip op. at 78 (9th Cir. June 12, 2017) (per curiam). After the Ninth Circuit's mandate issued, this Court amended the preliminary injunction in accordance with the Ninth Circuit's decision. Dkt. 291.

Three days ago—on June 26, 2017—the Supreme Court granted certiorari in this case and in *Trump* v. *International Refugee Assistance Project* (*IRAP*). It also granted a partial stay of this Court's preliminary injunction. It approved of the way that the existing injunctions balanced the equities with respect to "people or entities in the United States who have relationships with foreign nationals abroad." *Trump* v. *IRAP*, Nos. 16-1436 and 16-1540, slip op. at 10 (June 26, 2017) (per curiam). It held, however, that the equities "do not balance in the same way" with respect to the admission of "foreign nationals abroad who have no connection to the United States." *Id.* at 11. It therefore stayed the portions of the injunction that apply to those foreign nationals. But the Supreme Court was clear: "In practical terms, this means that §2(c) *may not be enforced* against foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the

3

United States." *Id.* at 12 (emphasis added). The same standard applies with respect to refugee admissions under sections 6(a) and 6(b). *Id.* at 13.

### B.  The Government's Plans to Enforce the Order

The Government has indicated that it will begin enforcing the non-enjoined portions of the Executive Order today, June 29, at 8:00 p.m. EDT. On June 27, Plaintiffs' counsel reached out to the Government to obtain information as to how the Government planned to implement the portions of the bans that are not enjoined. The Government offered no information, merely indicating that public guidance would be released before the Executive Order was implemented. Counsel asked whether the Government could, at a minimum, indicate whether it would put the Order into place within 72 hours of the Supreme Court's order, and how it intended to do so. The Government did not respond.

On June 28, 2017, Plaintiffs electronically transmitted a letter to the Government, setting out their position as to which foreign nationals the ban covers during the pendency of the Supreme Court's stay. That letter also asked the Government to discuss the scope of the injunction with the Plaintiffs in order to provide clear guidance to the public, prevent confusion at the border, and avoid the need to involve the courts. Again, Plaintiffs received no response from the Government.

This morning, June 29, 2017, Plaintiffs received from third parties (who have no connection to the Government) a document that purports to be draft guidance sent to consular offices regarding the enforcement of section 2(c) of the Order. That document is attached as Exhibit A. The contents of this document matched widely disseminated news reports describing the contents of the Government's guidance. Counsel for plaintiffs in the *IRAP* litigation asked the Government to confirm, by 1:00 p.m. EDT, whether this guidance was accurate, and to alter its contents in several respects to conform with the injunction. The Government responded only that public guidance would be made available later in the day. Several hours later, Plaintiffs also received reports from third parties concerning the Government's plans to enforce sections 6(a) and 6(b). Again, counsel for Plaintiffs asked the Government to detail its plans, and the Government said nothing.

Finally, at 4:43 p.m. EDT—approximately three hours before the Order's bans are to go into partial effect—the Government sent Plaintiffs a one-page document summarizing its interpretation of the injunction with respect to sections 6(a) and 6(b) (Exhibit B), and a link to a State Department webpage describing its interpretation of the injunction as applied to section 2(c) (Exhibit C). The Government also shared with Plaintiffs the transcript of a teleconference it had *previously* held with the media describing its plans in detail—making clear that it

5

had disclosed its intentions to the media hours before it had answered any of Plaintiffs' questions about the injunction entered in their name. *See* Ex. D.

## ARGUMENT

The Government intends to begin implementing its Executive Order at 8:00 p.m. EDT today. And it has made abundantly clear—through its internal documents, guidance that it shared with Plaintiffs at the eleventh hour, and its intervening call with the media—that it intends to violate the injunction in multiple respects. In particular, the Government has announced that it will (a) exclude close family members of U.S. persons; (b) deny entry to refugees with a "bona fide relationship" with U.S. resettlement agencies, assigned local sponsors, and set travel plans; and (c) adopt procedures that would result in additional improper denials. Plaintiffs have repeatedly asked the Government to conform its conduct to the injunction, but their efforts have been met with almost total silence.

When parties disagree over the scope of an injunction, the "proper approach" is for the parties to seek "clarification of the injunction from the district court." *Connecticut Gen. Life Ins. Co.* v. *New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003); *see Commodity Futures Trading Comm'n* v. *Co Petro Mktg. Group, Inc.*, 700 F.2d 1279, 1285 (9th Cir. 1983); *see also Regal Knitwear Co.* v. *NLRB*, 324 U.S. 9, 15 (1945) (district courts, in their "sound discretion" may "clarif[y]" their injunctions). Plaintiffs therefore file this motion to clarify. *See*

6

*Connecticut Gen. Life Ins. Co.*, 321 F.3d at 883; *see also IRAP*, slip op. 3 (Thomas, J., concurring) ("litigation of the factual and legal issues that are likely to arise will presumably be directed to the two District Courts").  Because irreparable harm will occur as soon as the Government begins to implement the Executive Order at 8:00 p.m. EDT, Plaintiffs respectfully request that this Court issue its clarification order as soon as possible, or at a minimum order that the status quo as to the matters in dispute be maintained until the Court can resolve any disagreements about the scope of the injunction in due course.

    **A.**     **This Court Should Clarify That the Injunction Bars the Government from Applying Sections 2(c), 6(a), and 6(b) to Exclude the Fiancés, Grandparents, Grandchildren, Brothers-in-Law, Sisters-in-Law, Aunts, Uncles, Nieces, Nephews, and Cousins of Persons in the United States.**

In its order partially staying this Court's injunction, the Supreme Court held that section 2(c), 6(a), and 6(b) "may not be enforced against foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States." *IRAP*, slip op. at 12-13.  In contrast, it stated, the Order could be applied against "foreign nationals abroad who have *no* connection to the United States *at all*," because "[d]enying entry to such a foreign national does not burden *any* American party" and because the Government interests "are undoubtedly at their peak when there is *no* tie between the foreign national and the United States." *Id.* at 12 (emphases added).  To clarify this distinction, the Court further explained:

7

> The facts of these cases illustrate the sort of relationship that qualifies. For individuals, a close familial relationship is required. A foreign national who wishes to enter the United States to live with or visit a family member, like Doe's wife or Dr. Elshikh's mother-in-law, clearly has such a relationship. As for entities, the relationship must be formal, documented, and formed in the ordinary course, rather than for the purpose of evading EO-2.

*Id.* at 12. The Court went on to explain that "students," "worker[s] who accepted an offer of employment" and "lecturer[s] invited to address an American audience" are all examples of aliens who qualify under this standard. *Id.*

Nonetheless, today the Government instructed U.S. consulates and refugee agencies to apply the Order against "grandparents, grandchildren, aunts, uncles, nieces, nephews, cousins, brothers-laws [sic] and sisters-in-law, [and] fiancés" of persons in the United States. Ex. A at 4, ¶ 11; *see* Ex. B; Ex. C. That instruction is a plain violation of the Supreme Court's command.

*First*, it is clear beyond doubt that fiancés cannot be excluded under section 2(c), 6(a), and 6(b).[1] A fiancé is a relationship expressly recognized and protected by the immigration laws. *See* 8 U.S.C. § 1101(a)(15)(K) (establishing nonimmigrant visas for fiancés). Moreover, the Supreme Court instructed lower

---

[1] Minutes before this filing, the Government sent an email to Plaintiffs' counsel informing Plaintiffs that "that the Government's position on the status of fiancés under the Supreme Court's stay and the Department of State's guidance from earlier today is under imminent review." Because Plaintiffs do not yet have the results of that review, and because the Order is scheduled to go into effect within hours, they ask this Court to clarify that the injunction covers fiancés.

8

courts to examine "[t]he facts of the[] cases" before it to identify "the sort of relationship that qualifies." *IRAP*, slip op. at 12. One of the plaintiffs in *IRAP* was an individual whose fiancé sought to immigrate to the United States. *See* Br. in Opposition 8 n.5, *Trump* v. *IRAP*, No. 16-1436 (June 12, 2017); *see also IRAP* v. *Trump*, 857 F.3d 554, 578 (4th Cir. 2017) (en banc). Although the fiancé's visa had already been granted at the time of the Court's order, the same was true of the Doe plaintiff that the Court identified as an example of the "sort of relationship that qualifies." *IRAP*, slip op. at 12. Indeed, the Court expressly stated that the fact "that Doe's wife received an immigrant visa * * * does not affect our analysis of the stay issues in these cases." *Id.* at 7 n.*. It would thus be a plain violation of the terms of the Court's order to interpret it in a manner that would deny a visa to those in precisely the same situation as one of the parties in the case before it.

*Second*, all of the relationships the Government has deemed non-qualifying—grandparents, grandchildren, aunts, uncles, nieces, nephews, cousins, brothers-in-law, sisters-in-law, and fiancés—are "close familial relationships" within the meaning of the Court's order. Each of these relationships is comparable to (if not closer than) the relationship between Dr. Elshikh and his mother-in-law. They too are within two degrees of consanguinity: *i.e.*, the immediate relative of someone in the person's nuclear family. A brother-in-law, for instance, is the brother of a U.S. person's spouse; there is no reason in logic or law why that

9

person is a more distant family member than the mother of a person's spouse. Likewise, it is inconceivable that a person would claim that he suffers a lesser burden if his *grandchildren* are excluded from the country than if his mother-in-law is. *See, e.g.*, *Moore* v. *City of East Cleveland*, 431 U.S. 494, 504 (1977) ("Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition.").

Nor are these distinctions justified by the immigration laws. By extending protection to mothers-in-law—and stating that such relationships are "*clearly*" protected by the injunction, *IRAP*, slip op. at 12 (emphasis added)—the Supreme Court made clear that the definition of "immediate family" in the Immigration and Nationality Act does not mark the outer limit of "close familial relationships" under its order. *Cf.* 8 U.S.C. § 1153(a) (limiting family preference visas to children, spouses, and siblings of U.S. citizens and lawful permanent residents); *id.* § 1151(b)(2)(A) (limiting "immediate relatives" to children, spouses, and biological parents of U.S. citizens who are at least 21 years of age). Consistent with common sense, the Court held that it extends more broadly, to any types of family members who can "credibl[y] claim" they would be "burden[ed]" by an alien's exclusion. *IRAP*, slip op. at 12.

10

The broader context of the Court's order also makes plain that these types of family relationships count. The Court explained that the equities tipped in favor of the Government, and thus justified a temporary stay of the injunction, only where an alien had "*no* connection to the United States *at all*" and exclusion did "not burden *any* American party." *Id.* at 11 (emphases added). The Court thus indicated that even the burden of being unable to hear "a lecture[]" was enough. *Id.* at 12. In this case, the Government has ordered consulates to exclude aliens who have some of the most elemental relationships known to human society, from grandparents to nephews. The Government cannot credibly claim that those aliens have "*no* connection to the Untied States *at all*," or that their exclusion is somehow less burdensome on U.S. persons than the exclusion of "a lecturer." *Id.* They therefore fall within the terms of the injunction as narrowed by the Supreme Court, and cannot be denied entry pursuant to the President's unlawful and discriminatory Order.

>   **B.  This Court Should Clarify That Refugees with a Bona Fide Relationship with a Person or Entity Within the United States Are Covered by the Injunction.**

The Supreme Court's opinion made it abundantly clear that "the equitable balance struck" with respect to the injunction of Section 2(c) "applies in [the] context of" the injunction against the "enforcement of the Section 6(a) suspension of refugee admissions and the Section 6(b) refugee cap." *IRAP*, slip op. at 13. For

11

that reason, a refugee is covered by the injunction if he or she has a relationship with an entity that is "formal, documented, and formed in the ordinary course." *Id.* at 12. Nonetheless, the Government issued guidance today that states that "a formal assurance for a refugee seeking admission * * * is not sufficient in and of itself to establish a qualifying relationship for that refugee." Ex. B (Refugee Guidance). That is preposterous.

Within the refugee program, a "formal assurance" is a document indicating the existence of a formal "agreement" by an agency within the United States to "provide, or ensure the provision of, reception and placement services to" a specifically named refugee. Ex. D (Sample Blank Formal Assurance Template). The formal assurance is one of the very last steps in the refugee resettlement process. *See* https://www.state.gov/j/prm/ra/admissions/. It typically specifies, among other things, the name of the refugee's local sponsor, the airport at which she will arrive, her placement location and other special instructions. *See* Ex. D. It is extremely difficult to see how a foreign national with an agreement to give a lecture within the United States may be considered to have a "formal, documented" relationship with an entity in the United States, *see* slip op. at 12, but a refugee with a guarantee of a local sponsor and a place to live cannot.

Further, and relatedly, the Administration has stated that it will only permit the entrance of refugees booked for travel through July 6, 2017. Ex. B. That too

12

makes little sense. A refugee with settled travel plans, whenever they are set to occur, inevitably has a bona fide relationship with her sponsors within the United States. That refugee is therefore covered by the injunction.

### C. The Court Should Clarify That the Court Cannot Apply a Presumption That Aliens Lack a Bona Fide Relationship with a Person or Entity in the United States.

Finally, Plaintiffs ask this Court to clarify the standard that should be applied by the Government in deciding whether a foreign national is covered by the injunction. The Supreme Court stated that individuals are still protected by the injunctions if they have a "credible claim of a bona fide relationship with a person or entity in the United States." *IRAP*, slip op. at 12. Although the guidance repeats this language in places, its operative sections require consular officers to "determine" whether a bona fide relationship exists and to *deny* visas if the answer is "unclear." Ex. A at 5, ¶ 13. That language appears to apply a presumption against the applicant that is inconsistent with a "credible claim" standard.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court issue an emergency order clarifying the scope of the injunction. Alternatively, Plaintiffs respectfully request that the Court order that the status quo as to the matters in dispute be preserved until the Court can clarify the scope of the injunction in due course.

13

DATED: Washington, D.C., June 29, 2017.

Respectfully submitted,

*/s/ Neal K. Katyal*

| | |
|---|---|
| DOUGLAS S. CHIN (Bar No. 6465)  Attorney General of the State of Hawaiʻi  CLYDE J. WADSWORTH (Bar No. 8495)  Solicitor General of the State of Hawaiʻi  DEIRDRE MARIE-IHA (Bar No. 7923)  DONNA H. KALAMA (Bar No. 6051)  KIMBERLY T. GUIDRY (Bar No. 7813)  ROBERT T. NAKATSUJI (Bar No. 6743)  Deputy Attorneys General  DEPARTMENT OF THE ATTORNEY GENERAL, STATE OF HAWAIʻI  *Attorneys for Plaintiff, State of Hawaiʻi* | NEAL K. KATYAL*  COLLEEN ROH SINZDAK*  MITCHELL P. REICH*  ELIZABETH HAGERTY*  THOMAS P. SCHMIDT*  SARA SOLOW*  ALEXANDER B. BOWERMAN*  HOGAN LOVELLS US LLP  **Admitted Pro Hac Vice*  *Attorneys for Plaintiffs, State of Hawaiʻi and Ismail Elshikh* |

14