IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| STATE OF HAWAI‘I and ISMAIL ELSHIKH,<br><br>        Plaintiffs,<br><br>    vs.<br><br>DONALD J. TRUMP, *et al.*,<br><br>        Defendants. | CV. NO. 17-00050 DKW-KSC<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE, OR, IN THE ALTERNATIVE, TO MODIFY PRELIMINARY INJUNCTION** |

## INTRODUCTION

On June 26, 2017, the United States Supreme Court granted certiorari in this matter, granted in part the Government's stay application, "and narrow[ed] the scope of the injunction[]" entered by this Court with respect to Sections 2(c), 6(a), and 6(b) of Executive Order 13,780.[1]   *Trump v. Int'l Refugee Assistance Project*, Nos. 16-1436 (16A1190) and 16-1540 (16A1191), slip op. at 11–12 (U.S. June 26, 2017) [hereinafter Slip. Op.] (per curiam).   Plaintiffs challenge the Government's implementation of the non-enjoined portions of EO-2, asking this Court to enforce or, in the alternative, to modify the scope of the existing preliminary injunction.

---

[1]Executive Order 13,780 is entitled, "Protecting the Nation from Foreign Terrorist Entry into the United States," 82 Fed. Reg. 13209 (Mar. 6, 2017) [hereinafter EO-2].

*See* Pls.' Mot. to Enforce or, In the Alternative, to Modify Prelim. Inj., ECF No. 328

[hereinafter Motion].

Upon careful consideration of the parties' expedited submissions, the Court

concludes that on the record before it, Plaintiffs have met their burden of

establishing that the requested injunctive relief is necessary to preserve the status

quo pending appeal regarding the definition of "close familial relationship"

employed by the Government with respect to Sections 2(c), 6(a) and 6(b) of EO-2.

Plaintiffs have similarly met their burden with respect to refugees with a formal

assurance, as it relates to the Government's implementation of Sections 6(a) and

6(b) of EO-2, and participants in the Lautenberg Program.   Plaintiffs' Motion is

accordingly GRANTED in these respects and DENIED to the extent other relief is

sought, for the reasons detailed below.

## BACKGROUND

The Court briefly recounts the factual and procedural background relevant to

Plaintiffs' Motion.

## I.   Prior Proceedings

### A.   This Court's March 29, 2017 Preliminary Injunction

On March 15, 2017, the Court temporarily enjoined Sections 2 and 6 of EO-2

nationwide ("TRO").   *See Hawaii v. Trump*, --- F. Supp. 3d ---, 2017 WL 1011673

(D. Haw. Mar. 15, 2017).   Upon Plaintiffs' motion, full briefing, and a March 29,

2017 hearing, the Court converted the TRO into a preliminary injunction ("PI").

*Hawaii v. Trump*, --- F. Supp. 3d ---, 2017 WL 1167383 (D. Haw. Mar. 29, 2017).

The Government appealed the Court's ruling on March 30, 2017.   Notice of

Appeal, ECF No. 271.

### B.      The Ninth Circuit's June 12, 2017 Opinion

The Ninth Circuit's June 12, 2017 *per curiam* opinion affirmed the injunction

as to Section 2(c), suspending entry of nationals from the six designated countries

for 90 days; Section 6(a), suspending the U.S. Refugee Admissions Program

("USRAP") for 120 days; and Section 6(b), capping the entry of refugees to 50,000

in fiscal year 2017.   *Hawaii v. Trump*, --- F.3d ---, 2017 WL 2529640, at *29 (9th

Cir. June 12, 2017) (per curiam).   The Ninth Circuit vacated the portions of the

injunction that prevented the Government from conducting internal reviews, as

otherwise directed in Sections 2 and 6, and the injunction to the extent that it ran

against the President.   *Id.*, 2017 WL 2529640, at *29.   The Ninth Circuit remanded

to this Court with instructions to enter an amended injunction consistent with its

opinion.   This Court accordingly entered an amended injunction on June 19, 2017,

upon issuance of the expedited mandate.   Am. Prelim. Inj., *Hawaii v. Trump*, No.

1:17-cv-00050-DKW-KSC (D. Haw. June 19, 2017), ECF No. 291.

## II.     The Supreme Court's June 26, 2017 Order

The Government petitioned for certiorari and filed an application to stay both the preliminary injunction entered in this case and the one entered by the District of Maryland in a case now consolidated on appeal.   *Int'l Refugee Assistance Project v. Trump*, --- F. Supp. 3d ---, 2017 WL 1018235 (D. Md. Mar. 16, 2017) [hereinafter *IRAP*] (issuing preliminary injunction); *aff'd in part, vacated in part*, 857 F.3d 554 (4th Cir. May 25, 2017) (No. TDC-17-0361, D. Md.; renumbered No. 17-1351, 4th Cir.).   On June 26, 2017, the Supreme Court granted certiorari in both cases.   Slip Op. at 9.   The Supreme Court also granted "the Government's applications to stay the injunctions, to the extent the injunctions prevent enforcement of §2(c) with respect to foreign nationals who lack any bona fide relationship with a person or entity in the United States," Slip Op. at 11–12.

More specifically, the Supreme Court stayed the preliminary injunctions relating to Section 2(c) in the following manner—

> The injunctions remain in place only with respect to parties similarly situated to Doe, Dr. Elshikh, and Hawaii.   In practical terms, this means that §2(c) may not be enforced against foreign nationals who have a credible claim of a bona fide relationship with a person or entity in the United States.   All other foreign nationals are subject to the provisions of EO-2.

Slip Op. at 12.   The Supreme Court explained that the facts in this case and in *IRAP* "illustrate the sort of relationship that qualifies"—

> For individuals, a close familial relationship is required.   A foreign national who wishes to enter the United States to live with or visit a family member, like Doe's wife or Dr. Elshikh's mother-in-law, clearly has such a relationship.   As for entities, the relationship must be formal, documented, and formed in the ordinary course, rather than for the purpose of evading EO-2. The students from the designated countries who have been admitted to the University of Hawaii have such a relationship with an American entity.   So too would a worker who accepted an offer of employment from an American company or a lecturer invited to address an American audience.   Not so someone who enters into a relationship simply to avoid §2(c): For example, a nonprofit group devoted to immigration issues may not contact foreign nationals from the designated countries, add them to client lists, and then secure their entry by claiming injury from their exclusion.

Slip Op. at 12.

With respect to the enjoined portions of Section 6 relating to refugee admissions and the refugee cap, the Supreme Court reasoned that the "equitable balance struck [with respect to Section 2(c)] applies in this context as well."   Slip Op. at 13.   It held—

> An American individual or entity that has a bona fide relationship with a particular person seeking to enter the country as a refugee can legitimately claim concrete hardship if that person is excluded.   As to these individuals and entities, we do not disturb the injunction.   But when it comes to refugees who lack any such connection to the United States, for the reasons we have set out, the balance tips in favor of the Government's compelling need to provide for the Nation's security.
>
> The Government's application to stay the injunction with respect to §§6(a) and (b) is accordingly granted in part.   Section 6(a) may not be enforced against an individual seeking admission as a

refugee who can credibly claim a bona fide relationship with a person or entity in the United States.  Nor may §6(b); that is, such a person may not be excluded pursuant to §6(b), even if the 50,000-person cap has been reached or exceeded.

*Id.* (internal citations omitted).

## III.   **Plaintiffs' Challenge To The Government's Implementation Of EO-2**

The Government began enforcing the non-enjoined portions of EO-2 on June 29, 2017 at 8:00 p.m. EDT.   In doing so, the Government published guidance to its agencies on the implementation and enforcement of EO-2, guidance that has been amended, and which the Government has indicated will be amended again, as circumstances warrant.   *See* Katyal Decl., Exs. A–C, & F, ECF Nos. 329-1, 329-2, 329-3, & 329-6.

The Government's guidance defines "close familial relationship" as including a parent, parent-in-law, spouse, fiancé, child, adult son or daughter, son-in-law, daughter-in-law, sibling (whether whole or half), and step relationships.   These relationships are exempt from EO-2.   The Government's definition does not include grandparents, grandchildren, aunts, uncles, nieces, nephews, cousins, brothers-in-law and sisters-in-law.[2]   Plaintiffs challenge the Government's narrower construction.

_____

[2]The Government's first official guidance published on June 29, 2017, before enforcement of Sections 2(c), 6(a), and 6(b), indicated that fiancés would not be considered to be close family members for purposes of applying the Supreme Court's decision.   That guidance was

With respect to refugee program guidance, the Government instructed agencies that, "[t]he fact that a resettlement agency in the United States has provided a formal assurance for a refugee seeking admission . . . is not sufficient in and of itself to establish a qualifying relationship for that refugee with an entity in the United States."   Katyal Decl., Ex. B, Dep't of State, *untitled guidance document* (received by Pls. June 29, 2017), ECF No. 329-2.   The Government also initially indicated that it had not determined whether refugees with a "bona fide relationship with a person or entity in the United States" would be permitted to travel after July 6, 2017, and would issue further guidance.   *See id.*   Updated guidance from the State Department instructs its private voluntary agency partners that "[n]o new [advanced booking notifications ('ABNs')] for travel for cases with or without the required bona fide relationship to a person or entity in the United States may be requested at this time.   We hope to allow new ABNs for such cases to resume in the very near future, once we clarify verification procedures."   Katyal Decl., Ex. F, E-mail from Lawrence E. Bartlett, Dir., Office of Admissions, Bureau of Population, Refugees, & Migration, to Voluntary Agencies (July 3, 2017, 16:30 EDT), ECF No. 329-6. Plaintiffs contest this guidance, principally asserting that refugees with a formal

---

subsequently updated to include fiancés.   *See* Katyal Decl., Ex. C, Dep't of State, *Exec. Order on Visas*, at 3 (June 29, 2017), ECF No. 329-3, *available at* https://travel.state.gov/content/travel/en/news/important-annoucement.html.

assurance can credibly claim a bona fide relationship with a refugee resettlement agency.

Plaintiffs additionally request that the Court recognize that certain client relationships with legal services organizations are protected by this Court's injunction, and that the participants in three specific refugee programs are categorically exempt from EO-2: "U.S.-affiliated Iraqis" at risk of persecution because of their contributions to the United States' combat mission in Iraq; participants in the Central American Minors Program; and participants in the Lautenberg Program, each of which, Plaintiffs argue, requires participants to have close family ties with the United States, a relationship with a "designated resettlement agency," or both.   Plaintiffs ask the Court to issue an order either enforcing or modifying its amended preliminary injunction to reflect the scope of relief requested in the Motion.[3]

---

[3]Plaintiffs request that the Court issue an order enforcing or modifying its preliminary injunction to reflect that

> (1) the injunction bars the Government from implementing the Executive Order against grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins of persons in the United States; (2) the injunction prohibits the Government from applying sections 6(a) and 6(b) to exclude refugees who: (i) have a formal assurance from a resettlement agency within the United States (ii) have a bona fide client relationship with a U.S. legal services organization; or (iii) are in the U.S. Refugee Admissions Program ("USRAP") through the Iraqi Direct Access Program for "U.S.-affiliated Iraqis," the Central American Minors Program, or the Lautenberg Program; (3) the injunction bars defendants

# DISCUSSION

## I.   Legal Standard

Federal Rule of Civil Procedure 62(c) allows this Court to issue further orders with respect to an injunction it issued, notwithstanding appeal, in order to preserve the status quo or ensure compliance with its earlier orders.   *See Nat. Res. Def. Council, Inc. v. Sw. Marine Inc*., 242 F.3d 1163, 1166 (9th Cir. 2001).[4]   Pursuant to Rule 62(c), "[t]he court may modify or broaden the scope of its injunction under its continuing duty to supervise the relief granted if it is informed of new facts that require additional supervisory action."[5]   *Nat'l Grange of the Order of Patrons of*

---

from suspending any part of the refugee admission process, including any part of the "Advanced Booking" process, for individuals with a bona fide relationship with a U.S. person or entity; and (4) the preliminary injunction prohibits the Government from applying a presumption that an applicant lacks "a bona fide relationship with a person or entity in the United States."

Mot. 1–2.

[4]*See also Hoffman for & on Behalf of N.L.R.B. v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976) (addressing situations in which a district court "has a continuing duty to maintain a status quo" and stating, "[w]e believe the rule should be, and we so hold that, in the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken").   The current status quo pending appeal is the preliminary injunction which enjoins defendants from enforcing portions of EO-2, as modified by the Supreme Court's June 26, 2017 order.

[5]*See also Toussaint v. McCarthy*, 801 F.2d 1080, 1090 (9th Cir. 1986) ("A change in the law may constitute a changing circumstance requiring the modification of an injunction.   An intervening judicial opinion may require modification of an injunction."), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

*Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1074 (E.D. Cal. 2016)

(citing, *inter alia*, *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647–48 (1961)

(holding that a district court has "wide discretion" to modify an injunction based on

changed circumstances or new facts); *A & M Records, Inc. v. Napster, Inc.*, 284 F.3d

1091, 1098–99 (9th Cir. 2002) (modification of injunction during pendency of

appeal was proper to clarify the injunction and supervise compliance in light of new

facts)).[6]

This Court is guided by the Supreme Court's instruction that "[c]rafting a

preliminary injunction is an exercise of discretion and judgment, often dependent as

much on the equities of a given case as the substance of the legal issues it presents."

Slip. Op. at 9 (citations omitted).

---

[6]Plaintiffs initially moved this Court to clarify the scope of the injunction, in light of the Supreme Court's June 26, 2017 modification (ECF. No. 293), a motion which the Court denied without reaching the merits.   *See Hawaii v. Trump*, --- F. Supp. 3d ----, 2017 WL 2882696 (D. Haw. July 6, 2017).   On July 7, 2017, the Ninth Circuit dismissed Plaintiffs' appeal of that decision and denied as moot their motion for an injunction pending appeal.   *See Hawaii v. Trump*, No. 17-16366, slip op. at 3 (9th Cir. July 7, 2017), ECF No. 3.   The Ninth Circuit explained that although this Court does "not have authority to *clarify* an order of the Supreme Court, it does possess the ability to interpret and enforce the Supreme Court's order, as well as the authority to enjoin against, for example, a party's violation of the Supreme Court's order placing effective limitations on the scope of the district court's preliminary injunction." *Id.*   Because Plaintiffs now seek such injunctive relief, the Court reaches the merits of their request, consistent with the Ninth Circuit's guidance.   *See id.* ("Plaintiff's motion before the district court was clear: it sought clarification of the Supreme Court's June 26 order, not injunctive relief.   Because the district court was not asked to grant injunctive relief or to modify the injunction, we do no fault it for not doing so.").

With this framework in mind, the Court turns to Plaintiffs' specific requests for injunctive relief.

## II. The Government's Implementation Of The Supreme Court's "Close Familial Relationship" Standard Is Unduly Restrictive

Plaintiffs request that the Court enjoin the Government from implementing EO-2 against grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins of persons in the United States.   The Supreme Court held that foreign nationals who claim a bona fide relationship with a person in the United States must have a "close familial relationship" in order to be excluded from the effects of EO-2, but the Supreme Court did not comprehensively define that phrase.   Slip Op. at 12.   The Government, in an effort to provide consular officials and agencies with the necessary guidance to implement the standard in a very short window of time, created a list of family relations it claims satisfies the standard. The Government's list includes only parents, parents-in-law, spouses, fiancés, children, adult sons or daughters, sons-in-law, daughters-in-law, siblings (whether whole or half), and step relationships, principally in reliance on certain provisions within the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*,

applicable to family-based immigrant visas.   *See, e.g.*, 8 U.S.C. §§ 1101(b)(1)–(2);

1151(b)(2); 1153(a); 1184(d).[7]

In its June 26, 2017 decision, the Supreme Court identified illustrative, but not

exhaustive, examples of "close familial relationships."   A spouse and a

mother-in-law "clearly" qualify, but which other relationships meet this standard is

less clear.   *See* Slip Op. at 12.   What is clear from the Supreme Court's decision is

that this Court's analysis is to be guided by consideration of whether foreign

nationals have a requisite "connection" or "tie" to this country.   *See* Slip Op. at 11

(holding that the injunction is not to be enforced against foreign nationals with "no

connection to the United States at all," those who "lack[] any connection to this

country," and "when there is no tie between the foreign national and the United

States.").   Put another way, context matters.   And when appropriately considered

in the context of the June 26 order, the Government's narrowly defined list finds no

support in the careful language of the Supreme Court or even in the immigration

statutes on which the Government relies.

First, the Government's utilization of the specific, family-based visa

provisions of the INA identified above constitutes cherry-picking and resulted in a

---

[7]The Government contends that, to the extent it also relies on INA provisions that govern the "allocation of a numerically-limited number of visas . . . [,] all of these provisions draw lines in the context of determining which familial relationships are close enough to petition for a visa under the INA.   That is exactly the type of line-drawing that the Supreme Court's opinion requires." Mem. in Opp'n 5 n.2 (citation omitted).

predetermined and unduly restrictive reading of "close familial relationship."

Other, equally relevant federal immigration statutes define a close family in a much

broader manner.   *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 297, 310 (1993)

(including "aunts, uncles, [and] grandparents" as among "close blood relatives")

(quoting 8 C.F.R. § 242.24 (1992), recodified at 8 C.F.R. § 236.3(b)(1)(iii)); *see*

*also* Fam. Sponsor Immigration Act of 2002, Pub. L. 107-150, § 2(a) (entitled

"Permitting Substitution of Alternative Close Family Sponsor In Case of Death of

Petitioner," and amending 8 U.S.C. § 1183a(f) to allow sisters-in-law,

brothers-in-law, grandparents, and grandchildren to sponsor aliens for admission).[8]

Second, Defendants point to nothing in the Supreme Court's order that

supports their truncated reading.   In fact, the Supreme Court specifically included a

mother-in-law within its definition of "close family" despite the exclusion of

mothers-in-law from the statutes relied upon by the Government in crafting its

guidance.   The Supreme Court was clear that EO-2 may not be enforced against Dr.

Elshikh's mother-in-law, not because she is merely the mother of his wife, but

because she "clearly has such a [close familial] relationship" with Dr. Elshikh

---

[8]Plaintiffs additionally identify other immigration laws that enable an individual to seek admission on behalf of "[g]randchild(ren)" and "[n]iece[s] or nephew[s]," 81 Fed. Reg. 92,266, 92,280 (Dec. 19, 2016); to apply for asylum if a "grandparent, grandchild, aunt, uncle, niece, or nephew" resides in the United States, 69 Fed. Reg. 69,480, 69,488 (Nov. 29, 2004); to apply for naturalization on behalf of a grandchild, 8 U.S.C. § 1433(a); and to qualify as a special immigrant if he is the "grandparent" of a person in the United States, *see* USA PATRIOT Act of 2001, Pub. L. No. 107-56, § 421(b)(3) (2001).

himself.   Slip. Op. at 12.   Had the Supreme Court intended to protect only immediate family members and parents-in-law, surely it could have said so.   It did not.

Indeed, Supreme Court case law drawn from other contexts supports a broader definition of "close familial relationship" than that urged by the Government.   *See, e.g.*, *Moore v. City of E. Cleveland*, 431 U.S. 494, 503–04 (1977) (holding that the invalidation of a local housing ordinance was warranted, in part, because the "tradition of uncles, aunts, cousins, and especially grandparents sharing a household with parents and children has roots equally venerable and equally deserving of constitutional recognition"); *Troxel v. Granville*, 530 U.S. 57, 63–65 (2000) (plurality opinion) ("[D]emographic changes of the past century make it difficult to speak of an average American family.   The composition of families varies greatly from household to household. . . .   In many cases, grandparents play an important role.").[9]

In sum, the Government's definition of "close familial relationship" is not only not compelled by the Supreme Court's June 26 decision, but contradicts it.

-----

[9] *See also Caldwell v. Brown*, No. C09-1332RSL, 2010 WL 3501839, at *2 (W.D. Wash. Sept. 3, 2010) ("[T]he grandparent-grandchild relationship is entitled to respect and some level of recognition in our society.   As the United States Supreme Court has recognized, grandparents often play an 'important role' in the lives of their grandchildren. . . .   The question is not whether grandparents are important members of the American family: they are." (quoting *Troxel*, 530 U.S. at 64)).

Equally problematic, the Government's definition represents the antithesis of common sense.   Common sense, for instance, dictates that close family members be defined to include grandparents.   Indeed, grandparents are the *epitome* of close family members.   The Government's definition excludes them.   That simply cannot be.   *See generally Klayman v. Obama*, 142 F. Supp. 3d 172, 188 (D.D.C. 2015) (noting that courts should not "abandon all common sense" when considering injunctive relief).[10]

In light of the careful balancing of the hardships and the equitable considerations mandated by the Supreme Court, the Court finds that Plaintiffs have met their burden of establishing that the specific requested injunctive relief related to EO-2 is necessary to preserve the status quo pending appeal.   Plaintiffs' Motion is accordingly granted with respect to this issue, and the Court will modify the injunction in the manner requested.

## III.    The Government May Not Exclude Refugees With A Credible Claim Of A Bona Fide Relationship With A Person Or Entity In The United States

Plaintiffs ask the Court to modify the injunction with respect to Sections 6(a) and 6(b) in several respects, each of which is addressed in turn.

---

[10]Although the Government contends that its "reasonable construction" is entitled to deference (*see* Mem. in Opp'n 9), it offers no authority in support of that proposition.

A.     **The Government May Not Exclude Refugees Covered By a Formal Assurance Between The Government And A United States Refugee Resettlement Agency**

Plaintiffs seek to prevent the Government from implementing agency guidance that "[t]he fact that a resettlement agency in the United States has provided a formal assurance for a refugee seeking admission . . . is not sufficient in and of itself to establish a qualifying relationship for the refugee with an entity in the United States."  Katyal Decl., Ex. B, Dep't of State, *untitled guidance document* (received by Pls. June 29, 2017), ECF No. 329-1.  Plaintiffs insist that a formal assurance issued by a resettlement agency satisfies the Supreme Court's bona fide relationship requirement due to the formal nature of the agreement and the extensive obligations it triggers on the part of the voluntary agency or affiliate.

The parties do not dispute that before *any* refugee is admitted to the United States under the USRAP, the Department of State must receive a commitment ("assurance") from a resettlement agency.  *See* Mem. in Opp'n to Emergency Mot. to Clarify, Bartlett Decl. ¶¶ 14–19; ECF No. 301-1; *see id.* ¶ 16 ("All refugees receive a sponsorship assurance from a resettlement agency before they travel to the United States.").  Once a particular refugee has been approved by the Department of Homeland Security and provides a satisfactory medical evaluation, the refugee is assigned to one of several Government-contracted resettlement agencies, which then submits an assurance agreeing to provide basic, required services if and when the

refugee arrives in the United States.   Bartlett Decl. ¶¶ 19–21, ECF No. 301-1.   The Government quarrels with the effect of such an assurance.   According to the Government, because the assurance is an agreement between the State Department and a resettlement agency, not an agreement between a resettlement agency and the refugee who benefits from the assurance, the assurance cannot evidence the type of bona fide relationship contemplated by the Supreme Court.   Mem. in Opp'n 11. The Court disagrees.

Nothing in the Supreme Court's decision requires a refugee to enter into a contract with a United States entity in order to demonstrate the type of formal relationship necessary to avoid the effects of EO-2.   An assurance from a United States refugee resettlement agency, in fact, meets each of the Supreme Court's touchstones: it is formal, it is a documented contract, it is binding, it triggers responsibilities and obligations, including compensation, it is issued specific to an individual refugee only when that refugee has been approved for entry by the Department of Homeland Security, and it is issued in the ordinary course, and historically has been for decades.   *See* Slip Op. at 12.   Bona fide does not get any more bona fide than that.[11]   Accordingly, Plaintiffs' Motion is granted with respect to this specific request for injunctive relief.[12]

_____

[11]Even if the Government is correct that the resettlement agency providing an assurance typically does not have "direct contact" with the refugee prior to his or her arrival, no such "direct contact"

## B.     No Modification With Respect To Legal Services Organizations Is Warranted

Plaintiffs request that the Court modify its injunction to specify that the Government is prohibited from applying Sections 6(a) and 6(b) to exclude refugees who have a bona fide client relationship with a United States legal services organization.

The Government previously noted that there currently is no applicable guidance regarding the treatment of legal services providers because the nature of such representational services varies significantly.   *See* Mem. in Opp'n to

---

is required anywhere in the Supreme Court's decision.   Moreover, the resettlement agency's binding commitments arise when the agency provides a formal sponsorship assurance.   *See* Bartlett Decl. ¶¶ 20–21, ECF No. 301-1*; see also* Suppl. Hetfield Decl. ¶¶ 4–5, ECF No. 336-3. The resettlement agency suffers a "concrete injury" in the form of lost resources when resettlement is thwarted by the very Government that approved that refugee's admission.   *See Exodus Refugee Immigration, Inc. v. Pence*, 165 F. Supp. 3d 718, 729, 731-732 (S.D. Ind.), *aff'd* 838 F.3d 902 (7th Cir. 2016); *see also Exodus Refugee Immigration, Inc. v. Pence*, No. 1:15-cv-01858-TWP-DKL, 2016 WL 1222265, at *5 (S.D. Ind. Mar. 29, 2016) (denying stay pending appeal pursuant to Rule 62(c), based, in part, on finding that the "State's conduct harms [the resettlement agency by] requir[ing] it to shift its resources to make up for the funding it will lose, [which] will have a detrimental effect on its Syrian and non-Syrian clients' resettlement and transition to life in the United States"), *aff'd* 838 F.3d 902 (7th Cir. 2016).   A relationship that results in such concrete hardship to a United States entity is precisely the circumstance that the Supreme Court has found to be deserving of exclusion from the effects of EO-2.   *See* Slip Op. at 13.

[12]Plaintiffs complain of travel procedures and booking dates that they assert the Government is using to flout this Court's injunction.   *See, e.g.*, Suppl. Hetfield Decl. ¶¶ 4–5 & Ex. A (E-mail from Lawrence E. Bartlett, to Voluntary Agencies (July 8, 2017, 8:05 EDT)), ECF No. 336-3.   As best the Court can discern, regardless of the booking date involved, these complaints all relate to refugees with formal assurances, who the Court has now determined have the requisite bona fide relationship contemplated by the Supreme Court, and who are therefore excluded from the application of EO-2.   No further relief covering these refugees appears to be necessary, and the Court denies any such request as moot.   If this ruling and the related injunction modifications set forth in this Order do not resolve or do not address Plaintiffs' travel procedure concerns, an application offering further detail may be filed.

Emergency Mot. to Clarify Prelim Inj. 20–21, ECF No. 301.   The Court agrees.

Plaintiffs, for instance, advocate that foreign nationals consulting abroad with

"affiliates" of American legal services providers regarding United States

immigration law qualify as having a credible claim of a bona fide relationship with a

person or entity in the United States.   That conclusion, while conceivable, appears

to be nearly impossible to reach absent additional facts, such as with respect to the

nature of the consultation and affiliation.   A categorical exemption of the sort

requested would run afoul of the Supreme Court's order, which provides at least one

example of when such a legal services client relationship would not be protected.

*See* Slip Op. at 12.

Accordingly, to the extent Plaintiffs seek injunctive relief on behalf of IRAP

and similar legal services providers, they fail to meet their burden, and the Court

declines to issue the categorical modification sought.

### C.	Categorical Modifications Relating To U.S.-Affiliated Iraqis, The Central American Minors Program, And The Lautenberg Program

Plaintiffs, joined by amici IRAP and HIAS, ask that the Court enforce or

modify the injunction due to the Government's alleged refusal to recognize

particular refugees who have the requisite relationship to a United States entity or

close family member contemplated by the Supreme Court.   More specifically,

Plaintiffs seek relief on behalf of refugees who accessed the USRAP through the

Iraqi Direct Access Program for U.S.-Affiliated Iraqis, the Central American Minors

Program, and the Lautenberg Program.   *See* Br. of IRAP *et al*. as Amici Curiae in

Supp. of Pls.' Mot. 10–13, ECF No. 339.

### 1.   <u>Direct Access Program For U.S.-Affiliated Iraqis</u>

Plaintiffs contend that refugee applicants in the Iraqi Direct Access Program

for U.S.-Affiliated Iraqis are categorically exempt from Sections 6(a) and 6(b)

because they necessarily have the requisite bona fide relationship with a United

States person or entity.   *See* Mem. in Supp. of Mot. 15 n.6; *see also* Br. of IRAP *et*

*al*. as Amici Curiae in Supp. of Pls.' Mot. 11–12; Allen Decl. ¶¶ 17–24, ECF No.

336-5 (describing mechanics and goals of program).   Under the program, Iraqis

who believe they are at risk or have experienced serious harm as a result of

associating with the United States Government since March 20, 2003 may apply

directly for resettlement as refugees in the United States, upon "verifiable proof of

U.S.-affiliated employment."   *See* Dep't of State, Bureau of Population, Refugees,

& Migration, *Fact Sheet: U.S. Refugee Admissions Program (USRAP) Direct*

*Access Program for U.S.-Affiliated Iraqis* (Mar. 11, 2016), *available at*

https://www.state.gov/j/prm/releases/factsheets/2016/254650.htm ("The following

individuals and their derivatives (spouse and unmarried children under age 21), with

verifiable proof of U.S.-affiliated employment, may seek access through this

program: 1. Iraqis who work/worked on a full-time basis as interpreters/translators

for the U.S. Government (USG) or Multi-National Forces (MNF-I) in Iraq; 2. Iraqis who are/were employed by the USG in Iraq[.]").   Program applicants need not be current employees of the United States or a United States-affiliated entity.

The Government opposes this request because the "Iraqi Direct Access Program includes certain nonqualifying relationships with the U.S. Government itself, as well as past (not current) relationships."   Mem. in Opp'n 15 n.6.   The Court concurs.   Although U.S-Affiliated Iraqis with verifiable past employment relationships with United States entities may qualify for participation in the program, these applicants are not necessarily exempt from EO-2.   The Supreme Court's guidance, as it relates to Section 6, clearly contemplates relationships that are current and existing.   That does not necessarily follow with respect to certain Iraqi Direct Access Program applicants.

Accordingly, on the record before the Court, categorical relief is not appropriate, and Plaintiffs' Motion is denied with respect to the Iraqi Direct Access Program for U.S.-Affiliated Iraqis.

## 2.   <u>Central American Minors Program</u>

The Central American Minors ("CAM") program "protects Central Americans at risk by allowing lawfully present parents in the United States to request refugee status for their children in El Salvador, Honduras, and Guatemala via the U.S. Refugee Admissions Program."   *See* Dep't of State, *Cent. Am. Minors*

*Program* (Nov. 2014), *available at* https://www.state.gov/j/prm/ra/cam/index.htm.

The Government argues that because the program also allows "caregivers" who are

merely "related to" the in-country parent or qualifying child to apply to the program,

these participants do not necessarily have a sufficiently close relationship to a

United States-based parent to qualify as a "close family member."   *See* Mem in

Opp'n 15 n.6; *see also* Dep't of State, *Worldwide Refugee Admissions Processing*

*System (WRAPS), CAM Frequently Asked Questions* (Nov. 2016), *available at*

https://www.wrapsnet.org/s/CAM-Frequently-Asked-Questions-November-2016.d

ocx.

　　While it appears that most of those eligible to participate in the program (*e.g.*,

minors with parents lawfully in the United States) would fall within those excluded

from EO-2, that is not categorically true for all of those in the program.   Because

caregivers need not have the requisite "close familial relationship" to the in-country

parent, program-wide relief is not appropriate.   Consequently, Plaintiffs' Motion is

denied with respect to refugees who are in the USRAP through the CAM Program.

### 3.    **Lautenberg Program**

　　The Lautenberg Program permits certain nationals of the former Soviet Union

and other countries with "close family in the United States" to apply for refugee

status.   *See* Dep't of State, *Proposed Refugee Admissions for Fiscal Year 2017*

(Sept. 15, 2016), *available at*

https://www.state.gov/j/prm/releases/docsforcongress/261956.htm ("This Priority 2 designation applies to Jews, Evangelical Christians, and Ukrainian Catholic and Orthodox religious adherents identified in the Lautenberg Amendment, Public Law No. 101-167, § 599D, 103 Stat. 1261 (1989) (codified at 8 U.S.C. § 1157) as amended ('Lautenberg Amendment'), with close family in the United States.").

The Government opposes Plaintiffs' request for categorical relief with respect to the Lautenberg Program solely because the program includes grandparents and grandchildren as "close family."   *See* Mem. in Opp'n 15 n.6 ("The Lautenberg Program . . . includes grandparents and grandchildren in the family relationship criteria for applicants."); *see also* Suppl. Hetfield Decl. ¶ 6, ECF No. 336-3.   In light of the Court's determination that grandparents and grandchildren are within the penumbra of "close family" for purposes of the Supreme Court's June 26 decision, the Court rejects the Government's position with respect to the Lautenberg Program. That is, because all participants admitted through the Lautenberg Program, including grandparents and grandchildren, *must* have a "close familial relationship" as that term is used in the Supreme Court's stay order, the categorical relief requested by Plaintiffs is appropriate.   As a result, Plaintiffs' Motion is granted with respect to refugees who are in the USRAP through the Lautenberg Program.

**IV.    No Modification Is Warranted With Respect To The Government's Alleged Use Of A "Presumption"**

In their Motion, Plaintiffs request modification of the injunction to prevent the Government from applying a so-called presumption that an applicant lacks the requisite bona fide relationship identified by the Supreme Court.   However, Plaintiffs present no substantive argument or authority in support of their request. *See* Mot. 2, ECF No. 328; Mem. in Supp. of Mot., ECF No. 328-1.   In fact, even in the face of the Government's opposition, which correctly noted that Plaintiffs appear to have abandoned their presumption contention (*see* Mem. in Opp'n 2 n.1), Plaintiffs' reply brief remained silent (*see generally* Reply, ECF No. 342).

The Court accordingly finds that Plaintiffs have abandoned their presumption argument, notwithstanding the relief sought in their proposed orders.   Because Plaintiffs present no discussion or authority in support of this request, there is no basis to award the injunctive relief sought, and the Motion is denied.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART.   The Court declines to stay this ruling or hold it in abeyance should an emergency appeal of this order be filed.

The Court MODIFIES the preliminary injunction entered on March 29, 2017, amended on June 19, 2017, and partially stayed by a June 26, 2017 decision of the United States Supreme Court, to provide as follows:

## PRELIMINARY INJUNCTION

It is hereby ADJUDGED, ORDERED, and DECREED that:

Defendants JOHN F. KELLY, in his official capacity as Secretary of Homeland Security; REX W. TILLERSON, in his official capacity as Secretary of State; and all their respective officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them, are hereby enjoined from enforcing or implementing Sections 2 and 6 of Executive Order No. 13,780 across the Nation—except for those portions of Sections 2 and 6 providing for internal review procedures that do not burden individuals outside of the executive branch of the federal government.   Enforcement of the enjoined provisions in all places, including the United States, at all United States borders and ports of entry, and in the issuance of visas is prohibited, pending further orders from this Court.

Defendants JOHN F. KELLY, in his official capacity as Secretary of Homeland Security; REX W. TILLERSON, in his official capacity as Secretary of State; and all their respective officers, agents, servants, employees, and attorneys, and persons in active concert or participation with them are enjoined fully from the following:

1.     Applying section 2(c), 6(a) and 6(b) of Executive Order 13,780 to exclude grandparents, grandchildren, brothers-in-law, sisters-in-law, aunts, uncles, nieces, nephews, and cousins of persons in the United States.

2.     Applying Section 6(a) and 6(b) of Executive Order 13,780 to exclude refugees who: (i) have a formal assurance from an agency within the United States that the agency will provide, or ensure the provision of, reception and placement services to that refugee; or (ii) are in the U.S. Refugee Admissions Program through the Lautenberg Program.

IT IS SO ORDERED.

Dated: July 13, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*State of Hawaii, et al. v. Trump, et al.*; Civil No. 17-00050 DKW-KSC; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO ENFORCE, OR, IN THE ALTERNATIVE, TO MODIFY PRELIMINARY INJUNCTION**